**Glenn P. COUCH, III, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3324.**

Court of Appeals of Alaska.

July 27, 1990.

Victor C. Krumm, Anchorage, for appellant.

Joseph M. Cooper, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and ANDERSON, District Court Judge.[*]

## OPINION

SINGLETON, Judge.

Glenn P. Couch, III, was convicted upon his plea of no contest to the charge of criminal nonsupport, a class A misdemeanor. AS 11.51.120(a). Couch entered his plea pursuant to an agreement with the States of Alaska and Nevada regarding past due child support payments. According to the terms of this agreement, Couch pled no contest, submitted himself to open sentencing on the charge, and withdrew the protest under which he had paid his past due child support. Following his arrest, Couch had made payment under protest of $24,795.20 in child support arrearages owing in Alaska and Nevada. In return

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

for Couch's plea, Nevada dismissed its charges of criminal nonsupport against Couch, and Alaska dismissed an extradition action which had been based on the Nevada charges.

District Court Judge Natalie Finn sentenced Couch to a term of 180 days with 90 days suspended, and a $5,000 fine with $2,500 suspended. Judge Finn ordered that if Couch wished to do so, he could perform 30 8-hour days of community work service in lieu of 30 of the unsuspended days of incarceration. Couch appeals this sentence as excessive. We affirm.

The information to which Couch pled alleged that he had failed to make court-ordered child support payments from December 23, 1985 until January 25, 1988, the eighteenth birthday of his youngest child.[1] The district court found at Couch's sentencing that Couch had been delinquent in his child support payments since 1978. It was not until Couch was arrested for criminal non-support in 1989 that he satisfied the December 23, 1985, judgment and paid the child support owing from that date.

Couch contends that he should have received only a probationary sentence. Relying on *Leuch v. State*, 633 P.2d 1006 (Alaska 1981), Couch argues that the imposition of any jail time in this case would be excessive. In that case the supreme court adopted the general rule that:

> [W]here an offense is against only property, involving no physical threats or violence; where it is the offender's first felony conviction; and where there is no background of unsuccessful paroles or probations which would indicate that probation is unsuitable to protect the public, to deter the offender, and to further his rehabilitative progress, probation, coupled with restitution, is the appropriate sentence unless other factors militate against it.

*Id.* at 1013–14 (footnotes omitted). The court went on to hold that, "[n]aturally, this is not to be construed as a hard and fast rule." *Id.* at 1014. The court then departed from the rule, ordering that Leuch's sentence for grand larceny should not exceed a total of five years of combined time to serve and suspended time. Among the factors upon which the court in *Leuch* based its departure from the general rule are two that are relevant in this case: community condemnation which is at the upper end of the spectrum for property crimes; and a failure to make restitution for prior offenses, which the court equated with a background of unsuccessful probation. *Id.*

Couch does not have a background of unsuccessful parole or probation, as was the case in *Leuch*. However, Couch's history suggests that he would not be amenable to probation. For ten years Couch failed to make monthly child support payments, in complete disregard of orders from the courts of both Alaska and Nevada. This calls into question his ability to police himself and to comply with the conditions of unsupervised probation.

In *Leuch*, the court found that because one of the Leuch's thefts was a large-scale crime that had had a severe impact on an uninsured victim, community condemnation for this crime would be at the upper end of the spectrum for property offenses. *Id.* Couch characterizes his crime as a property offense, and attempts to minimize it by arguing that the amount for which he "was criminally liable in Alaska at the time of his arrest was approximately $1,900."[2] In fact, Couch's crime was not an offense against property, but an offense against the family. *See* AS 11.51, Offenses Against the Family. Couch's victims were not strangers or insurance companies, but his own children.

The community's condemnation of such crimes is clearly set out by the Alaska State Legislature in the 1984 Alaska Ses-

---

1. On December 23, 1985, Alaska Superior Court Judge Gerald Van Hoomissen issued a judgment in favor of Couch's former wife for $15,225 in child support arrears, and ordered Couch to pay child support of $87.50 per child per month.

2. Judge Finn could properly consider Couch's history of failing to voluntarily pay court ordered child support. She was not clearly erroneous in determining that the case should be considered as if it involved a greater sum than $1,900.

sion Laws, Chapter 144, an Act designed to "enhance efforts to enforce the requirements that parents pay the cost of rearing their children and thereby enhance the quality of life for all Alaskans." Ch. 144, § 1(d), SLA 1984. In the Act the legislature sets forth these findings:

(a) The legislature finds that the effect on the general public of the failure of parents to support their children is vast and far reaching. The harmful effects of unpaid child support touch not only the poor but reach far beyond, diminishing the overall quality of life for all Alaskans. The purpose of the amendments in this Act is to enhance the efforts of those persons who seek to enforce the payment of child support obligations by noncustodial parents having the duty of support.

(b) The legislature also finds that a disproportionately high percentage of lower-income, single-parent families are headed by women. The difficulties in obtaining child support from noncustodial parents contributes significantly to the hardship of those families. The fact that the general public bears the huge monetary cost of supporting families on public assistance because of inadequate support from noncustodial parents is only one of the most obvious effects of the problem of unpaid child support. In addition, it is recognized that the failure of parents to support their children is a major factor contributing to the broader social problems of child abuse and delinquency. Even when families are able to survive without public assistance, the hardship experienced by a family, and particularly the children in that family, is usually substantial.

Ch. 144, § 1(a)–(b), SLA 1984.

Obviously, general deterrence will be another important consideration for courts faced with this widespread problem. We can find no fault with the conclusion of the sentencing court in this case that a purely probationary sentence would not discourage non-custodial parents from withholding child support payments and then paying in a lump sum only if and when they are arrested.

The district court's sentencing remarks reflect the court's consideration of all of the factors set forth in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), and a conclusion that of these factors, deterrence of others and reaffirmation of societal norms were of paramount importance in this case. Criminal nonsupport is unlike most other crimes in that it arises from a failure to observe a legal duty which is of a limited duration. The duty to pay child support ceases to exist when children reach the age of majority. As in this case, prosecutions of criminal nonsupport may often be completed after an offender no longer has a future support obligation. Even the most defiant offender in this situation could successfully avoid commission of new violations and thereby claim great potential for rehabilitation without undergoing any change of attitude or conduct. Under these circumstances, the sentencing court could quite reasonably place great emphasis upon deterrence of others and community condemnation as sentencing goals. It is the sentencing court's prerogative to decide the weight and order of priority to be given to each of the *Chaney* goals, based on the circumstances of the individual case. *Nicholas v. State*, 477 P.2d 447, 448 (Alaska 1970); *Smith v. State*, 691 P.2d 293, 295 (Alaska App.1984). "[A] finding that a non-custodial sentence would fail to deter the defendant and/or others to the requisite degree ... justifies a sentence of incarceration." *Leuch*, 633 P.2d at 1011.

Having independently reviewed the sentencing record, we conclude that Couch's sentence is not clearly mistaken. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

COATS, J., not participating.